## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

INTERNATIONAL UNION, UNITED
AUTOMOBILE AEROSPACE &
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, and its
AMALGAMATED LOCAL 405,

    Plaintiffs,

 v.

GOODRICH PUMP & ENGINE CONTROL
SYSTEMS, INC.,

    Defendant.

3:16-cv-00264(CSH)

September 29, 2017

## OMNIBUS RULING ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

HAIGHT, Senior District Judge:

   This case, brought under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, alleges a violation of a contract between Defendant employer and Plaintiff labor organizations representing employees in an industry affecting commerce. Specifically, Plaintiffs seek an order compelling Defendant to accept and process certain grievances, including submitting those grievances to binding arbitration if they cannot be otherwise resolved.

   Before the Court is a Motion to Dismiss [Doc. 10] filed by Defendant Goodrich Pump & Engine Control Systems, Inc. ("Defendant," or "Goodrich"), and the Cross-Motion for Summary Judgment [Doc. 15] filed by Plaintiffs International Union United Automobile Aerospace & Agricultural Implement Workers of America and its Amalgamated Local 405 ("Plaintiffs," "Union," or "UAW").

Defendant included, with its Motion to Dismiss, a number of exhibits not filed with Plaintiffs' Complaint [Doc. 1]. While Plaintiffs concede that the majority of these exhibits were incorporated into their Complaint by reference, and are therefore appropriate to consider on a motion to dismiss, they object to the Defendant's reliance on Exhibit A, the Goodrich Pension Plan ("Pension Plan" or "the Plan"), a document Plaintiffs believe to be extrinsic to the pleadings, and urge the Court to convert the Motion to Dismiss to a motion for summary judgment, as provided for by Federal Rule of Civil Procedure 12(d). Pl. Br. 8. Defendant resists this suggestion in its Reply Brief [Doc. 26].

While this Ruling will address both pending motions, it will start with a consideration of Plaintiffs' suggestion that the Motion to Dismiss must be converted to a motion for summary judgment. The initial factual background will thus exclude some facts and issues not relevant or appropriate to consider at this time.

## I. BACKGROUND

Plaintiff unions are the international and local labor organizations which represent employees at a West Hartford factory formerly operated by Defendant, an employer engaged in an industry affecting commerce. The Parties entered into a collective bargaining agreement ("CBA") which, by its terms, was to be in effect from February 27, 2011 to February 27, 2016.[1] *See* Compl. Ex. A. The CBA contains, in Article XVII § 1, provisions relating to the calculation of retirement benefits for employees who retire early. Article IV § 1of the CBA contains a clause, common to many labor agreements, providing a grievance procedure for the resolution of disputes as to "the interpretation or application of any provision of this Agreement." Article V provides for mandatory arbitration

---

[1] Defendant disputes this statement, in the context of Plaintiffs' Motion for Summary Judgment, but did not raise that dispute in its Motion to Dismiss.

of grievances, with some limited exceptions not relevant here.

In March 2013 Defendant Goodrich sold its West Hartford facilities, where Plaintiff union members were employed, to non-party Triumph Corporation ("Triumph"), an unrelated entity ("the March 2013 sale").[2]  Compl. ¶ 2.  Plaintiffs' members' employment transferred from Goodrich to successor Triumph in March 2013.

In September 2015, 25 members of Plaintiff labor organizations, who believed themselves to be eligible for the reduced pension benefits as described by Article XVII, wrote identical letters to Defendant, requesting a pension benefit estimate and pension application forms.  *See* Compl. 4; Def. Br. 2.

On January 18, 2016, Tom Nemec, Director of Industrial Relations for UTC Aerospace Systems ("UTAS") responded to these inquiries in a letter addressed to Plaintiff's counsel ("the Nemec Letter").  *See* Compl. 4-5; Mot. to Dismiss Ex. C.  The Nemec Letter includes a description of the respective pension responsibilities of Triumph and the United Technologies Corporation (UTC), a successor organization to Defendant Goodrich.  Nemec's interpretation of the pension obligations under Article XVII differs somewhat from the interpretation put forward by the union members.[3]  The Nemec Letter directs the union letter writers, if they "are seeking more specific

---

[2] The effect of this transaction on Defendant's obligations under the CBA is an issue of dispute as to Plaintiffs' Motion for Summary Judgment, and will be addressed later in this opinion.

[3] The Court will refrain, here and throughout this opinion, from describing or inquiring into the disputed interpretations, as this goes to the merits of the dispute, and not its arbitrability. *See United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567-68 (1960) ("The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract . . . .The courts, therefore, have no business weighing the merits of the grievance").

figures based on their own personal factors," to contact the UTC Pension Center "[f]or information on their UTC Plan pension benefit," and refers further questions to Marc Yahl, UTAS Benefits Rep.

Plaintiffs then brought this case, under the authority of § 301 of the LMRA, to enforce the CBA and obtain an order compelling Goodrich to accept and process certain grievances concerning the interruption of seniority and early retirement provisions of the CBA. Compl. 7. Defendant resists this effort, and filed a Motion to Dismiss [Doc. 10].

Defendant urges the Court to dismiss the Complaint, arguing that the dispute is not subject to arbitration because the CBA, through incorporation of the pension plan by reference, requires that pension benefit claims and calculations be resolved by the Employee Retirement Income Security Act ("ERISA") plan administrator. Def. Br. 2. Defendant includes, as Exhibit A to its brief, the Pension Plan, dated January 1, 2002.

Plaintiffs in turn filed a Cross Motion for Summary Judgment [Doc. 15], which asserts, *inter alia*, that the Plan is outside the pleadings, and therefore inappropriate to consider on a motion to dismiss. Pl. Br. 8. Plaintiffs state that they have no objection to the conversion of Defendant's Motion into a motion for summary judgment, as provided for by Rule 12(d) of the Federal Rules of Civil Procedure. *Id.* at 9. Plaintiffs further move for summary judgment on their own behalf. *Id.*

Defendant, by a brief filed in opposition [Doc. 26], asserts that, since the Complaint [Doc. 1] undisputedly relied upon the CBA, and because the CBA (by Defendant's interpretation) incorporates the Plan by reference, the Court may properly consider the Plan on a motion to dismiss under Rule 12(b)(6). Def. Reply Br. 3-4. Defendant's Reply Brief also argues, in the alternative, that, even if the Court finds (against Defendant's urging) that Plaintiffs' dispute is subject to the CBA's arbitration clause, Plaintiffs' Cross Motion for Summary Judgment should not be granted

because Defendant's obligations under the CBA terminated with the completion of the sale of the plant to Triumph in March 2013. *Id.* at 9-11.

Plaintiffs have filed a further brief in opposition [Doc. 27], resisting Defendant's contentions as to the Complaint's reliance on the Plan, and asserting that, contrary to Defendant's claim of termination, the CBA was still in effect at the time Defendant refused to arbitrate. Pl. Reply Br. at 2-5. Even if the CBA had been terminated by the March 2013 sale, as asserted by Defendant, Plaintiffs maintain that the CBA would nonetheless oblige Defendant to arbitrate Plaintiffs' underlying dispute, as it concerns, by Plaintiffs' estimation, benefits earned while the CBA was in effect. *Id.* at 9-10.

Thus, the Court must first consider whether to convert Defendant's Motion to Dismiss [Doc. 10] to a motion for summary judgment, as urged in the affirmative by the Plaintiffs, and resisted by Defendant.

## II. RULE 12(d) STANDARD FOR CONVERSION TO SUMMARY JUDGMENT

Federal Rule of Civil Procedure 12(b)(6) allows a party to defend itself by asserting its opponent's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(d) provides that, if, on a Rule 12(b)(6) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

> When matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Rule 56 and afford all parties the opportunity to present supporting material. This conversion requirement is strictly enforced whenever there is a

> legitimate possibility that the district court relied on material outside the complaint in ruling on the motion.

*Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000) (citation and internal quotation marks omitted).

*See also Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) ("This conversion requirement is 'strictly enforced' in the Second Circuit," quoting *Friedl*, 210 F.3d at 83).

As noted *supra*, UAW argues that Exhibit A to Goodrich's Motion to Dismiss, the Pension Plan, was not cited or relied upon by the Complaint, and may not, therefore, be introduced in support of a motion to dismiss. Pl. Br. 8. Plaintiffs therefore urge that Defendant's Motion to Dismiss be converted to a motion for summary judgment, a suggestion that Goodrich objects to.

### III. DISCUSSION AS TO CONVERSION UNDER RULE 12(d)

Plaintiffs aver that "all relevant provisions of the CBA" were appended to the Complaint, as Exhibit A. Compl. ¶ 10. This inclusion, and the Complaint's undisputed reliance on terms of the CBA, incorporate the CBA into the Complaint by reference. *See San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 808 (2d Cir. 1996).

The closer question is whether the Plan may be considered on a motion to dismiss. Here, Defendant contends that, because the Plan is incorporated into the CBA by reference, the Plan is part of the "full text" of the CBA, and may properly be considered on a motion to dismiss. *See* Def. Br. 5 n.3. Plaintiffs resist this interpretation, and emphasize that the Complaint did not rely on the Plan, and that, if the Court is to consider the Plan, Defendant's Motion must be converted to one for summary judgment. *See* Pl. Br. 8.

"Under general principles of contract law, a contract may incorporate another document by making clear reference to it and describing it in such terms that its identity may be ascertained beyond doubt." *New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 30 (2d Cir. 1997)

(citing 4 Williston on Contracts § 628, at 903-04 (3d ed. 1961)).  The CBA identifies the Plan, at Article XVII § 1: "The Company has established a pension plan, Goodrich Corporation Employees' Pension Plan, (EIN 34-0252680, PN 001) . . . . [T]he annual funding of the Pension Plan shall be in accordance with the with the minimum funding standards of [ERISA]."  This language is both a clear reference to the Plan, and a description such that the Plan's identity may be ascertained beyond doubt.  Therefore, under general principles of contract law as applied in this Circuit,  the CBA incorporates the Plan by reference.  *See New Moon Shipping*, 121 F.3d at 30.  The question then, is whether, by incorporating the CBA into the Complaint, Plaintiffs have incorporated any document (like the Plan) that was itself incorporated by reference into the CBA.

Defendant urges the Court to consider the Plan, at the motion to dismiss stage, as part of the "full text" of the CBA.  Def. Reply Br. 3.  Defendant relies chiefly on two cases: *Stratte-Mcclure v. Stanley*, 776 F.3d 94, 100 (2d Cir. 2015), which states the general rule as to which materials may be considered on a motion to dismiss, but makes no mention of considering the "full text" of a document included or quoted in part; and *McGown v. City of New York*, No. 09 Civ. 8646(CM) 2010 WL 3911458, *4, 2010 U.S. Dist. LEXIS 96595, *13 (S.D.N.Y. Sept. 9, 2010) (McMahon, *J.*).  In *McGown*, Judge McMahon wrote, "this Court may consider the full text of documents that are quoted in or attached to the complaint," but she does not explain what constitutes the "full text" or engage in any further analysis – it appears that the documents at issue in *McGown* were documents, such as a related state court opinion, which were integral to the complaint but, because they were not favorable to his case,  *pro se* plaintiff had failed to mention or attach.

The "full text" standard mentioned, if not applied, in *McGown* was derived from *San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801,

808 (2d Cir. 1996), where

> [t]he allegedly actionable statements set forth in the Complaint were culled from press releases, wire service reports, newspaper articles, and annual company reports. In dismissing the Complaint the District Court did not limit its consideration to plaintiffs' selected quotations, but also considered the full text of the documents relied on in the Complaint.

*San Leandro Emergency Med. Grp.*, 75 F.3d at 808. After "acknowledg[ing] that our Circuit has pursued a somewhat uneven course in determining the extent to which the full text of documents partially quoted in a complaint may be considered in ruling on a 12(b)(6) motion," the Second Circuit endorsed the district judge's approach, holding that, "the documents partially quoted in the Complaint are . . . integral . . .and we therefore conclude that the District Court was entitled to consider the full text of those documents in ruling on the motion to dismiss." *Id.* at 808-09 (internal quotation marks and citation omitted). The holding of *San Leandro Emergency Medical Group* is that, on a 12(b)(6) motion, a district court may consider the full text of documents partially quoted in a complaint and integral to that complaint. *See, e.g.*, *Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*, 153 F. Supp. 3d 628, 643 (S.D.N.Y. 2015) (Ramos, *J.*); *In re NTL, Inc. Sec. Litig.*, 347 F. Supp. 2d 15, 21 n.17 (S.D.N.Y. 2004) (Kaplan, *J.*); *In re Livent, Inc. Sec. Litig.*, 148 F. Supp. 2d 331, 367 (S.D.N.Y. 2001) (Marrerro, *J.*) ("According to the emerging rule in this Circuit, a district court may consider the full text of a document partially quoted in the complaint where Plaintiffs have notice of the document's contents and the document is integral in drafting the complaint" (internal quotation marks omitted) (quoting *Bartley v. Artuz*, No. 95 CIV. 10161 (DAB), 1999 WL 942425, at *4 (S.D.N.Y. Oct. 19, 1999) (Batts, *J.*) and citing *San Leandro Emergency Med. Grp.,* 75 F.3d at 808-09)); *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 218 n. 6 (S.D.N.Y. 1999) (Sweet, *J.*).

As the CBA is undisputedly "integral" to the Complaint, the question remains: is the Plan properly considered under a Rule 12(b)(6) motion, as part of the "full text" of the CBA?[4]

Plaintiffs, as noted, strongly object to the consideration of the Plan on a Rule 12(b)(6) motion, and asks the Court to convert the Motion to Dismiss to a motion for summary judgment, arguing that Plaintiffs did not quote, cite, or rely on the Plan in bringing this action. Pl. Br. 8.

The Court agrees that Plaintiffs did not rely on the Plan in drafting the Complaint. Plaintiffs did rely on, quote, and cite the CBA in bringing this action. *Id.* As the Plan was incorporated by reference into the CBA, and is therefore part of the "full text" of the CBA, it is properly considered

---

[4] This reflexive inquiry – does incorporation by reference of a CBA into a complaint incorporate by reference a pension plan, incorporated by reference into that CBA – has been considered by at least one other district court, in Louisiana, which held that considering an analogous pension plan would be improper on a motion to dismiss:

> While it is true that . . . the Labor Agreement incorporates by reference the terms of the Plan, this Court is reluctant to consider on a motion to dismiss a document that is only mentioned in the plaintiff's complaint by way of an attached document that references it. Even though the Labor Agreement incorporates the Plan by reference, the relationship between the Plan and the complaint is too attenuated to warrant consideration of the Plan on a motion to dismiss. The fact of the matter is that [plaintiff]'s complaint never mentions the Plan at all. At the very least, then, it is fair to conclude that at this stage in the proceedings, the Plan is not "central to [plaintiff's] claim," which is what this Circuit requires for judicial noticing of documents offered by a defendant on a motion to dismiss. Accordingly, the Court may not rely upon the Pension Plan and its provisions in deciding Defendant's pending motion to dismiss.

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. Noranda Alumina, LLC,* No. CIV.A. 13-5059, 2014 WL 1050790 at *8, 2014 U.S. Dist. LEXIS 35109 (E. D. La. Mar. 18, 2014) (footnotes omitted). However, as indicated by the quoted language, the Fifth Circuit applies a different construction to determine whether consideration of extrinsic documents may be appropriate on a motion to dismiss, and the Court is not convinced that the logic of this unpublished opinion should apply here.

on a motion to dismiss. Even were the Court to reach a contrary conclusion as to the "full text" question, consideration of the Plan would still not be forestalled, as it works none of the injustice contemplated by the Rules in excluding extrinsic documents from the decision of Rule 12(b)(6) motions. *See, e.g., Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("the problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered; it is for that reason – requiring notice so that the party against whom the motion to dismiss is made may respond – that Rule 12(b)(6) motions are ordinarily converted into summary judgment motions").

Finally, it is settled law and common sense that "arbitration is a matter of contract." *AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). "Like other contracts, [a CBA] must be read as a whole . . . ." *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 279 (1956). "When courts interpret CBAs, traditional rules of contract interpretation apply as long as they are consistent with federal labor policies." *Aeronautical Indus. Dist. Lodge 91 v. United Techs. Corp.*, 230 F.3d 569, 576 (2d Cir. 2000). In short, Defendant's Motion to Dismiss presents the Court with a question of contract interpretation, and it would be a perverse and pointless exercise to exclude the Plan, incorporated by reference into that contract, from the Court's reading of the CBA's contractual language.

Accordingly, the Court rejects Plaintiffs' suggestion that the Defense Motion be converted to one for summary judgment, and will proceed to resolve it on the Rule 12(b)(6) standard, taking into account the documents attached to that Motion, as incorporated into the pleadings by reference.

## IV. STANDARD FOR MOTION TO DISMISS

A plaintiff must set forth sufficient factual allegations, which accepted as true, "state a claim to relief that is plausible on its face" in order to survive a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007)) (internal quotation marks omitted). In applying this standard, the Court is guided by "'[t]wo working principles.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). First, all factual allegations in the complaint must be accepted as true and all reasonable inferences must be drawn in the plaintiff's favor although the Court need not accept "legal conclusions" or similar conclusory statements. *See id.* Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense" and only if a complaint states a plausible claim for relief will it survive a motion to dismiss. *Id.* (quoting *Iqbal*, 556 U.S. at 679) (internal quotation marks omitted).

## V. STANDARD FOR COMPELLING ARBITRATION UNDER THE LMRA

Plaintiffs brought this action under § 301 of the Labor-Management Relations Act (LMRA), 29 U.S.C. § 185. *See* Compl. 1. § 301 creates a federal cause of action for violation of collective bargaining agreements (CBAs). 29 U.S.C. § 185. Like many prior suits brought under this statute, this matter concerns the refusal of one party to enter into binding arbitration.

In a series of cases known as the "Steelworkers Trilogy," the Supreme Court established the baseline principles which courts apply when considering a suit to compel arbitration under the LMRA. *See United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593 (1960); *Warrior & Gulf Navigation Co.*, 363 U.S. 574; *Am. Mfg. Co.*, 363 U.S. 564.

> [A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Yet, to be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*Warrior & Gulf Nav. Co.*, 363 U.S. at 582-83. So strong is the presumption of arbitrability, that, with a "broad" arbitration clause in place, "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* at 584-85.

Accordingly, the bare elements which Plaintiff must plead, in order to survive a motion to dismiss, are (1) the existence of a CBA, binding on both Parties, with a valid arbitration clause; (2) the existence of a dispute subject to that arbitration clause; and (3) Defendant's refusal to submit that dispute to arbitration.

## VI. DISCUSSION AS TO MOTION TO DISMISS

Defendant asks the Court to dismiss the Complaint for failure to state a claim upon which relief can be granted. Mot. to Dismiss 1. Defendant's Motion is aimed at the second of the three elements listed just above, the existence of a dispute subject to arbitration – Defendant contends that the Plan's "claim-processing and administrative-review procedures" exclude the pension-related claims at issue from the CBA's arbitration clause. *Id.* at 2. Plaintiffs object that the CBA does not contain any language "unambiguously" excluding the pension disputes at issue from the arbitration clause. Pl. Br. 11.

To resolve this dispute, and determine whether the Complaint states a claim upon which relief can be granted, the Court must examine, first, the scope of the CBA's arbitration clause; second, the exclusionary effect, if any, of the Plan's provisions for claims processing and administrative review procedures on the scope of that arbitration clause; and, third, (if the Plan has any such exclusionary effect) whether the claims at issue are of the type which the Plan's language excludes from the CBA's arbitration clause.

## A. The CBA's Arbitration Clause

Article IV of the CBA is titled "Grievance Procedure," and states at § 1, with exclusions not here relevant, "Should any employee or group of employees feel aggrieved concerning the interpretation or application of any provision of this Agreement regarding: rates of pay, wages, hours of employment, or any conditions affecting the health or safety of employees, adjustment thereof shall be sought as follows. . . ."  Compl. Ex. A. 10.

This is not such a "broad" arbitration clause as those considered by the Steelworkers Trilogy, which subjected to arbitration "[a]ny disputes, misunderstandings, differences or grievances arising between the parties as to the meaning, interpretation and application of the provisions of this agreement." *Am. Mfg. Co.*, 363 U.S. at 565 n. 1.  However, the arbitration clause in the case at bar still provides for a relatively extensive scope of arbitration, as opposed to so-called "narrow" arbitration clauses, which are exclusive rather than inclusive, and may limit arbitration to a single type of dispute, or a short and exclusive list.  *See, e.g., Gangemi v. General Elec. Co.,* 532 F.2d 861, 865-66 (2d Cir. 1976).  *See, generally,* Determination of Arbitrability, 20 Williston on Contracts § 56:34 (4th ed. 2017).

## B. The Plan's Claims-Processing and Administrative Review Procedures

The Plan [Doc. 11-1], at ¶ 9.1, assigns "sole responsibility for the administration of the Plan . . . as specifically described in the Plan" to the Benefit Design and Administration Committee ("the Committee").

> The . . . Committee . . . will perform their duties . . . solely in the interests of Participants and their Beneficiaries. Except as so limited, the . . . Committee shall have full discretionary authority with respect to the interpretation of the Plan, and the interpretations, conclusions and decisions reached by the . . . Committee shall be final and conclusive . . . . By way of illustration and not of limitation, the . . . Committee shall have the following authority and responsibilities with respect to the Plan . . . :
>
> . . . .
>
> (b) To resolve all questions relating to the eligibility of Employees to become Participants, and determine the amount, manner and timing of the payment of any benefits hereunder;
>
> (c) . . . to decide disputes arising under the Plan and to make determinations and findings (including factual findings) with respect to the benefits payable thereunder and the persons entitled thereto as may be required for the purposes of the Plan . . . .
>
> . . . .
>
> The Benefit Design and Administration Committee or its designees shall interpret the Plan and shall have discretionary authority to resolve all issues arising in the administration, interpretation, and application of the Plan, and the interpretations, conclusions, and decisions reached by the Committee or any designees of the Committee shall be final and conclusive.

Plan ¶¶ 9.7, 9.13.

At ¶ 9.15, the Plan details the "Claims Procedure," which includes an "Appeal Procedure" for denied claims: "To the extent permitted by applicable law, the decision on appeal shall be final and binding on all persons."

-14-

Defendant urges the Court to hold that the Committee's expansive authority under the Plan, a document incorporated by reference into the CBA, displaces the CBA's arbitration clause as to pension benefit disputes. Def. Br. 1 ("By incorporating these standard . . . claims procedures, the parties unambiguously expressed their intent to exclude pension-benefit calculation from the agreement's general arbitration provision").

While the Second Circuit has not addressed this question head-on, a number of circuit courts have held that, even absent an explicit exclusion of pension benefit disputes from a CBA's broad arbitration clause, an incorporated benefit plan's detailed and exclusive dispute resolution provisions can constitute the sort of "forceful evidence" needed to demonstrate the intention to exclude disputes over individual pension benefit determinations from arbitration. *See Teamsters Local Union No. 783 v. Anheuser-Busch, Inc.*, 626 F.3d 256, 262-63 (6th Cir. 2010); *United Steelworkers of Am., AFL-CIO-CLC v. Commonwealth Aluminum Corp.*, 162 F.3d 447, 451–52 (6th Cir. 1998) ("We find that the incorporation of the claims review procedure, which expressly provides that the decisions of the Plan Administrator will be final and binding on all interested parties, expresses an intention to exclude from arbitration all benefit disputes which are within the Administrator's authority"); *Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 10 v. Waukesha Engine Div., Dresser Indus., Inc.,* 17 F.3d 196, 199 (7th Cir. 1994); *Local Union No. 4-449, Oil, Chem. & Atomic Workers Union, AFL-CIO v. Amoco Chem. Corp.*, 589 F.2d 162, 164 (5th Cir. 1979). The Court finds these opinions persuasive, and considers the Plan language may exclude those individual benefit calculation disputes from the CBA's broad arbitration clause.

## C. The Pension Issues in Dispute

Plaintiffs allege that Defendant has violated the CBA by the Nemec Letter's assertions "that

[1] Goodrich's obligation to pay early retirement pension benefits reduced only from age 62 'depends on an employee's age at the time of the sale ...' and [2] some or all of the Goodrich employees who authored the September 2015 Letters [are] eligible for only a 'Deferred Vested' pension from Goodrich, that is, a pension payable to persons whose seniority with Goodrich has been contractually interrupted." Compl. ¶¶ 16-17. It is Plaintiffs' position, on which the Court passes no judgment, that these positions violate certain terms of the CBA. Compl. ¶ 17. The Nemec Letter further directs Plaintiff union members to contact another authority – the UTC Pension Center – "for more specific figures based on their own personal factors," and/or "information on their UTC Plan pension benefit." Nemec Letter 2.

## D. Analysis

Based on the three foregoing sub-sections, the Court will summarize the situation thus, strictly for the purposes of the instant Motion to Dismiss: 1) Parties were bound by a CBA with a valid, broad arbitration clause; 2) the Pension Plan, incorporated by reference into that CBA, includes a detailed, comprehensive, and exclusive dispute resolution system as to pension benefit determinations, which may be enough to provide the "most forceful evidence" required to exclude a dispute from the CBA's broad arbitration provision; 3) the question then remains, does the nature of Plaintiffs' dispute subject it to the Plan's dispute resolution procedures, thereby potentially excluding it from the CBA's broad arbitration provision?

Arguing in the affirmative, Defendant relies chiefly on a Sixth Circuit opinion, *Teamsters Local 783 v. Anheuser-Busch, Inc.*, 626 F.3d 256, 262 (6th Cir. 2010), which held that a pension plan's dispute resolution plan, incorporated by reference into a CBA, explicitly excluded a dispute over the calculation of an individual union member's pension benefit from that CBA's general

-16-

arbitration clause.

The Plan language in this case, quoted above, also provides that "the interpretations, conclusions and decisions reached by the[] Committee shall be final and conclusive." Doc. 11-1 at 58. Considering the Plan as incorporated in the CBA by reference, this unequivocal statement of finality may constitute the sort of "most forceful evidence" which exempts a dispute from a broad arbitration clause. *Warrior & Gulf Nav. Co.*, 363 U.S. at 585. It may be, as Defendant maintains, that "the CBA – including the Plan terms it incorporates – exempts pension claims from arbitration." Def. Reply Br. 2. But Plaintiffs are not seeking to grieve and arbitrate a pension claim, nor any other "interpretation[], conclusion[], or decision[]" of the Committee. Rather, Plaintiffs contend that Defendant violated the CBA "by the position taken in the Nemec Letter". Compl. ¶ 17.

The Nemec Letter is expressly *not* a pension claim determination – as noted above, Nemec summarized Defendant's understanding of the principles underlying the benefit calculations at issue and instructed plaintiff union members who needed "more specific figures based on their own personal factors" to contact a separate entity for a benefit calculation. Nemec Ltr. 2. UAW's dispute with Goodrich is thus more akin to the pension *plan modification* dispute considered by the Second Circuit, in *United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers Local 4-5025 v. E.I. DuPont de Nemours & Co.*, 565 F.3d 99, 102 (2d Cir. 2009) (per curiam), than it is to the pension *benefit* dispute considered by the Sixth Circuit in *Anheuser-Busch*.

In *DuPont*, the plaintiff union sought to compel arbitration of a dispute which arose following the defendant employer's modification of ERISA benefit plans referenced by the relevant

CBA.[5]  There,

> DuPont argue[d] that the Union's grievance is akin to an
> individual plan member's claim of eligibility, and is therefore subject
> to the internal dispute resolution procedures of the benefit plans
> rather than to arbitration under the CBA. The benefit plans give the
> Plan Administrator (i.e., DuPont) sole authority to determine
> eligibility for benefits under the plans and to construe the terms of the
> plans. DuPont argue[d] that any dispute about the changes to the
> benefit plans must be resolved through these internal mechanism or
> through a civil enforcement action under ERISA.

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Local 4-5025*

*v. E.I. DuPont de Nemours & Co.*, 565 F.3d 99, 101 (2d Cir. 2009) (citation omitted).   After

reviewing the Steelworkers Trilogy, and subsequent Supreme Court precedent, the Second Circuit

affirmed the district court's arbitration order, granting plaintiff union's motion for judgment on the

pleadings:

> Considering the present dispute in light of these precedents, we
> hold that the Union's grievance is not akin to an individual's claim for
> eligibility under the terms of the plan, but is instead an argument that
> DuPont's actions violated the CBA.  And where a grievance does not
> "implicate[] the responsibilities of the Plan's administrators," but is
> "directed only at the responsibility imposed . . . under the CBA," our
> Court has specifically recognized that arbitration, if called for by the
> CBA, is appropriate.

*Id.* at 102 (quoting and citing *Schweizer Aircraft Corp. v. Local 1752*, 29 F.3d 83, 86 (2d Cir.1994).

This distinction between the individual claim and the contract-wide dispute finds support in

---

[5] Neither the Second Circuit nor the district court opinion explicitly addressed the issue
of whether the disputed plans were incorporated into the CBA by reference, though the Second
Circuit noted, "[a]t first, the Union sought relief as to six different benefit plans, but later
withdrew its claims with regard to two – DuPont's Medical Care Assistance Program and Dental
Assistance Plan – because those plans were not referenced in the CBA."  *DuPont*, 365 F.3d at
101 n.1. This Court's reliance on *DuPont* does not turn on whether or not the DuPont plans and
their dispute resolution procedures were incorporated by reference into the CBA, though it seems
reasonable to assume that the plans were so incorporated.

a recent Fifth Circuit opinion:

> In sum, [Fifth Circuit precedent] and our sister circuits' decisions could be read to stand for this proposition: A dispute is arbitrable if the dispute concerns a direct violation of a right under the CBA, rather than a challenge to a determination of an employee's eligibility for benefits under the benefits plan. This principle recognizes the importance of the source of the disputed right, and, furthermore, prevents clashes between arbitration and disputes governed by the Employee Retirement Income Security Act ("ERISA"), about which [plaintiff employer] professes to be concerned.

*Houston Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 414–15 (5th Cir. 2014) (collecting cases from the Third, Fourth, Fifth, Sixth, Seventh, and Tenth Circuits).

In *Anheuser-Busch*, the Sixth Circuit case on which Defendant chiefly relies, Jerry T. Vincent, a member of plaintiff union, filed a written grievance with the defendant employer only *after* the pension plan director and appeals committee had rejected his application for full retirement benefits. *Anheuser-Busch*, 626 F.3d at 259. The proper calculation of Vincent's retirement benefits was the only matter in dispute. *Id.* at 262 n. 1 ("Local 783's complaint was vague . . . . However, when questioned at oral argument, counsel for Local 783 admitted that the only benefits in dispute were pension rights, and that those rights came from the Pension Plan . . . and no other source"). As in the present case, the pension plan was incorporated into the CBA by reference, and included a detailed and specific mechanism for resolving individual pension benefit disputes. *Id.* at 262. The Sixth Circuit affirmed the district court's grant of summary judgment to the defendant employer, holding that "Vincent's grievance is expressly excluded from the arbitration clause by the Pension Plan document itself." *Id.*

The facts in this case are not identical to those in *DuPont*, and there are details of the present dispute which might appear more similar to *Anheuser-Busch* – notably, the instant case originates

with the inquiries of individual union members as to their potential benefit eligibility, not a union-wide grievance related to a broadly-effective plan modification. However, the manner in which the dispute arose is, at least here, circumstantial rather than substantive. In *DuPont*, defendant employer explicitly announced its modifications to the bargained-for benefit plans,[6] whereas here, UAW alleges a *sub silentio* modification, which has come to light through the Nemec Letter's response to individual union members' inquiries. As discussed, the Nemec Letter is not addressed to individual union members, and does not purport to be a determination of any individual member or members' benefit eligibility. It is UAW's contention that the Nemec Letter is, in essence, a post-facto announcement of a modification of the benefit terms agreed to in the CBA. (The Court will again refrain from speculating as to the merits of this contention.) While this alleged modification to bargained-for benefits came to light through individual union members' inquiries, rather than from a company-wide email, the alleged violation is systemic, not individual. Even assuming *arguendo* that pension benefit disputes are excluded from the broad arbitration clause by the Pension Plan's dispute resolution provisions, this is not, as presented to the Court, a pension benefit dispute.

For the foregoing reasons, I hold that, if the CBA was in effect at the time Plaintiffs sought to file their grievances, UAW's grievances are subject to that CBA's arbitration clause, and Goodrich's Motion to Dismiss for failure to state a claim is therefore DENIED. The remainder of this Ruling will address Plaintiffs' Cross-Motion for Summary Judgment.

---

[6] A more complete fact pattern for the Second Circuit *DuPont* decision can be found in the district court opinion, *United Steel, Paper, and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers Local 4-5025 v. E.I. Dupont de Nemours & Co.*, 2008 WL 728372, *2 (W.D.N.Y. Mar. 18, 2008):"On August 28, 2006, DuPont Senior Vice President Jim Borel issued an announcement via e-mail . . . . The e-mail announced various benefit changes for new and existing employees. . . . On September 6, 2006, the Union filed a grievance arguing that the announced changes violated the terms of the CBA."

## VII. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party must "demonstrate the absence of any material factual issue genuinely in dispute" to be entitled to summary judgment. *Am. Int'l Grp., Inc. v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir. 1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319-20 (2d Cir. 1975)) (internal quotation marks omitted). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[I]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute concerning the material fact is genuine. *Id.* All inferences and ambiguities must be viewed in the light most favorable to the nonmoving party. *Rogoz v. City of Hartford*, 796 F.3d 236, 245-46 (2d Cir. 2015).

"In order to defeat a summary judgment motion that is properly supported by affidavits, depositions, and documents as envisioned by Fed. R. Civ. P. 56(e), the opposing party is required to come forward with materials envisioned by the Rule, setting forth specific facts showing that there is a genuine issue of material fact to be tried." *Robertson v. Wells Fargo Bank, N.A.*, No. 3:14-cv-01861, 2017 WL 326317, at *7 (D. Conn. Jan. 23, 2017) (quoting *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996)) (internal quotation marks omitted). "A plaintiff may not rely solely on 'the allegations of the pleadings, or on conclusory statements, or on mere assertions that affidavits

supporting the motion for summary judgment are not credible.'" *Id.* (quoting *Gottlieb*, 84 F.3d at

518). In other words, "[w]hen the moving party has carried its burden under Rule 56[], its opponent

must do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party

"must present specific evidence demonstrating a genuine dispute." *Gannon v. UPS*, 529 F. App'x

102, 103 (2d Cir. 2013) (citing *Anderson*, 477 U.S. at 248). Such evidence must be admissible.

Allegations alone, without evidence in support of such allegations, are not sufficient. *Robertson*,

2017 WL 325317, at *7 (citing *Welch-Rubin v. Sandals Corp.*, No. 3:03-cv-481, 2004 WL 2472280,

at *1 (D. Conn. Oct. 20, 2004)). "Where there is no evidence upon which a jury could properly

proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed,

such as where the evidence offered consists of conclusory assertions without further support in the

record, summary judgment may lie." *Id.* (citing *Fincher v. Depository Trust & Clearance Co.*, 604

F.3d 712 (2d Cir. 2010)).

## VIII. ADDITIONAL BACKGROUND

Plaintiffs' Motion is accompanied by a Statement of Material Facts [Doc. 17], as required

by Local Rule of Civil Procedure 56(a)(1), supported by the affidavit of Shawn Tripp, President of

Plaintiff Local 405, and various exhibits. Defendant has responded with a Statement of Material

Facts [Doc. 26-1], supported by the affidavit of Kenneth E. Levine, UTC Senior Director of Global

Retirement Strategy, and various exhibits. This additional background draws on those documents,

as well as the materials referenced by the Complaint.

### A. Facts Not in Dispute

Plaintiffs have represented Defendant's production and maintenance employees at the West

Hartford plant since 1999, when Defendant acquired that facility. Pl. Loc. R. 56(a)(1) Statement ¶ 1. Parties negotiated and executed a CBA with effective date February 27, 2011, originally slated, by its terms, to remain in effect until February 27, 2016. CBA at 5, 71; Pl. Loc. R. 56(a)(1) Statement ¶ 2; Def. Loc. R. 56(a)(2) Statement ¶ 2.

In March 2013, Defendant sold the West Hartford operations to the Triumph Corporation. Pl. Loc. R. 56(a)(1) Statement ¶ 3. Upon completion of the sale, all workers at the West Hartford plant "were hired by Triumph and continued to work at the plant." Pl. Loc. R. 56(a)(1) Statement ¶ 4. On February 23, 2013, Barry Bayly, an International Representative of Plaintiff Union, wrote a letter to Tim Daubert, "Director of Human Resources, Goodrich/Triumph Company," which read, in part:

> We are pleased you will be hiring the existing workforce, and honoring the current collective bargaining agreement.
>
> There are, however, a number of issues over which we would like to bargain and we have a number of questions we have concerning the sale. We will ask out members to hold off on signing the letter that you are requesting until the transition questions are answered.

Levine Decl. Ex. A.

Bayly received a response on behalf of Triumph from William M. Bauer, Director of Risk Management and Employee Benefits, and a separate response on behalf of Defendant from Kenneth E. Levine, Director of Global Retirement Strategy for United Technologies Corporation ("UTC") and former director of Goodrich's Retirement Benefits Program. Levine Decl. Exs. B, C. Bauer's letter read, in part, "UTC's post-closing pension obligations and the labor matters contained in the agreement have been referred to UTC." Levine Decl. Ex. B. The attached answers to questions posed by Bayly's letter include the assertion that "[b]enefits accrued before the sale will be the

responsibility of UTC/Goodrich." *Id.* Levine's letter to Bayly read, in part, "The UTC pension plan will pay benefits in accordance with the plan provisions, including the pension multiplier, in effect at the time of the closing date of the sale of the West Hartford business to Triumph." Levine Decl. Ex. C.

On March 13, 2013, Triumph Vice President for Human Resources Elisabeth H. Barrett sent a letter to Plaintiff Local President Shawn Tripp, offering him continued employment at the West Hartford facility, and stating: "Triumph will recognize your service, vacation accrual date and service record with Goodrich and will honor the terms of the existing collective bargaining agreement between Goodrich and the United Auto Workers." Tripp Aff. ¶ 7, Ex. 2. Similar letters were sent to other employees. Tripp Aff. ¶ 7.

In September 2015, 25 members of Plaintiff labor organizations sent identical letters to Defendant ("the September letters"), asking for "a pension benefit estimate for . . . a[n] . . . early retirement pension from Goodrich Pump, commencing now, as well as the appropriate application forms for completion with respect to the same."[7] Pl. Loc. R. 56(a)(1) Statement ¶ 6, Def. Loc. R. 56(a)(2) Statement ¶ 6; Tripp Aff. Ex. 3. The letters asked that any response be sent to Bayly, and to union counsel Michael Nicholson, and concluded: "please provide the name and address of the Goodrich Pump representatives with whom I should communicate should I wish to invoke the grievance and arbitration provisions contained with the above-referenced 2011-2016 Goodrich Pump-UAW collective bargaining agreement against Goodrich." Tripp Aff. Ex. 3., Pl. Loc. R.

---

[7] Plaintiffs assert that 26 such letters were sent in September. Defendant avers that one of these letters was actually sent in October, a statement supported by Exhibit 3 to the Tripp Affidavit, which reproduces all 26 letters. While 25 of these letters are dated in September 2015, the final letter in that Exhibit was signed by George Inho on October 19, 2015. This discrepancy, and the question of whether there are 25 or 26 letters are not material.

56(a)(1) Statement ¶ 7.

On November 30, 2015, attorney Nicholson emailed Matthew Lukitsch, UTC Benefits Coordinator.  Pl. Loc. R. 56(a)(1) Statement ¶ 8.  Referencing the September letters, Nicholson wrote:

> Despite the passage of over two months, no response has been received by any of these 25 persons. These persons and the UAW wish to invoke the grievance and arbitration provisions of the 2011-2016 Goodrich Pump-UAW collective bargaining agreement with respect to their assertion of pension rights stated in the attached. Absent a prompt and satisfactory response indicating a willingness on the part of Goodrich Pump to move forward with arbitration of these matters under the referenced 2011-2016 collective bargaining agreement, the UAW will be forced to commence federal litigation under 29 U.S.C. 185 seeking an order compelling such arbitration.

Tripp Aff. Ex. 4.

On January 18, 2016, Tom Nemec, Director of Industrial Relations for UTC Aerospace Systems ("UTAS"), replied to Nicholson by letter.  Pl. Loc. R. 56(a)(1) Statement ¶ 9; Tripp Aff. Ex. 5.  Nemec described the respective pension responsibilities of Triumph and UTC, a successor organization to Defendant Goodrich, and directs the union letter writers, if they "seek[] more specific figures based on their own personal factors," to contact the UTC Pension Center "[f]or information on their UTC Plan pension benefit," referring further questions to Marc Yahl, UTAS Benefits Rep.  Tripp Aff. Ex. 5.

On January 26, 2016, Nicholson emailed Nemec to inquire as to where to file a grievance against Defendant, "under the existing labor agreement between Goodrich and UAW, concerning the position taken by Goodrich in this matter regarding pension benefits payable by Goodrich," and professing his clients' willingness, in the alternative, to proceed directly to arbitration.  Pl. Loc. R. 56(a)(1) Statement ¶ 10; Tripp Aff. Ex. 6.  Nicholson sent a second email to Nemec on February 8,

2016, renewing his inquiry, and providing that, "[u]nless I hear from Goodrich by the close of business on February 16, 2016 that it is prepared to process a grievance concerning these matters (and to arbitrate such grievance if unresolved), the UAW will be forced to file a final version of the attached draft complaint."  Pl. Loc. R. 56(a)(1) Statement ¶ 11; Tripp Aff. Ex. 7.

On February 16, 2016, two Vice Presidents of UTAS sent Nicholson an email, on behalf of Defendant, which read, in part,

> Because your clients are no longer employed by UTC, UTAS or Goodrich and are currently employed by Triumph (and have been since the 2013 closing date of the sale) we believe any grievance they wish to file must be with the current employer – Triumph. . . .
>
> Alternatively, our review of your clients' letters suggests that what you are in fact seeking [is] a full and fair review of an adverse claim for additional pension benefits under the UTC Represented Employee Retirement Plan ("Plan").  The Plan is a qualified pension plan subject to the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and UTC has a well-established ERISA administrative process for adjudicating ERISA governed benefit claim appeals.  Please note this process is available to any plan participant with an accrued benefit, without regard to whether he or she is a current UTC employee. Accordingly, we believe this is the course of action your clients must take with respect to any claim against UTC for enhanced Plan benefits.

Pl. Loc. R. 56(a)(1) Statement ¶ 12, Tripp Aff. Ex. 8.

**B. Disputed Facts**

The essential disputed fact is whether or not the CBA was in effect at the time Plaintiffs sought to file a grievance and Defendant denied that application, a time period encompassing September 2015 through February 2015, though Defendant parses this as three separate factual disputes:

> 1. Whether the collective bargaining agreement between Goodrich and the UAW terminated as to Goodrich in March of 2013, upon the

sale of Goodrich's former West Hartford-based pump and engine control systems business to Triumph.

2. Whether Triumph manifested its intention, through words and/or conduct, to assume and accept assignment of Goodrich's responsibilities under the collective bargaining agreement.

3. Whether the UAW manifested its intention, through words and/or conduct, to assent to the substitution of Triumph as the obligated employer under the collective bargaining agreement, thereby terminating the agreement as to Goodrich and discharging it from future performance.

Def. Loc. R. 56(a)(2) Statement 5 (citations omitted).

## IX. DISCUSSION AS TO CROSS-MOTION FOR SUMMARY JUDGMENT

For the purposes of adjudicating Plaintiffs' Cross-Motion, the Court holds that, as a matter of law, if the CBA was in effect and binding on Defendant from September 2015 through February 2016, Defendant's failure to process a grievance and to proceed to arbitration violates the terms of the CBA.

There remains the question, however, as to whether the CBA was in effect, and binding on Defendant, at the time of the alleged violations. Defendant maintains that, in transferring its plant operations and employment to Triumph, in March 2013, the CBA was terminated. Def. Reply Br. 2.

Defendant puts forward an evidentiary basis for the proposition that, by the March 2013 sale, Triumph was substituted for Goodrich, thereby terminating Goodrich's obligations. *See* Def. Reply Br. 9-11. To summarize Defendant's argument, it posits that: 1) all of the Goodrich employees at the West Hartford plant were hired by Triumph; 2) Triumph agreed "to abide by and assume Goodrich's obligations under the CBA"; 3) Defendant Goodrich "understood . . . that the [March 2013 sale] would result in the substitution *and release* of Goodrich's obligations under the CBA"

(emphasis added); and 4) Plaintiff "UAW assented to this substitution when it expressly acknowledged *and accepted* Triumph's commitment" to honor the CBA (emphasis added). *Id.* at 11. Defendant urges that these four pieces of evidence "raise[] a compelling inference of mutual agreement to substitute Triumph for Goodrich as the party to be bound" – a novation – and establish a genuine factual dispute sufficient to defeat Plaintiffs' Motion for Summary Judgment. *Id.*

The cases Defendant cites in support of this theory are not persuasive – they largely deal with the obligations of the *successor* employer, and none stands squarely for the point that an employer succession effects a novation of the effective CBA, releasing the original employer/obligor.

This comports with general principles of contract law. "The promise by a third party to assume the duty of a prior obligor is ordinarily presumed to be in addition to, rather than in substitution for, the obligor's original duty." *Soneco Serv., Inc. v. Bella Const. Co.*, 175 Conn. 299, 300–01 (Conn. 1978) (citing Restatement of Contracts Second § 350). A defense of novation "requires proof that the one in the position of creditor . . . had accepted a new debtor . . . in the place of the defendant to which they would look for fulfilment of the . . . obligation owing to them. In addition, it requires proof that the plaintiffs had agreed to a discharge of the defendant's obligation to them." *Mace v. Conde Nast Publications, Inc.*, 155 Conn. 680, 688–89 (Conn. 1967).

Thus, the pivotal question is not whether Defendant Goodrich (or Triumph for that matter) believed that Triumph's assumption of the CBA would "release" Goodrich from its obligations. The question is whether Plaintiff, the obligee in this context, did, in fact, release Defendant Goodrich from its obligations – the question posed by Defendant as "[w]hether the UAW manifested its intention, through words and/or conduct, to assent to the substitution of Triumph as the obligated employer under the collective bargaining agreement, thereby terminating the agreement as to

Goodrich and discharging it from future performance." Def. Loc. R. 56(a)(2) Statement 5.

To establish a material issue of disputed fact on this point, Defendant cites the proffered affidavits of Tripp and Levine, the February 2013 Bayly letter, and the March 2013 offer letter addressed to Tripp. *Id.* Tripp, the local union president at the time of the sale, avers that "[n]either party terminated the collective bargaining agreement described above at the time of the sale or at any time prior to its expiration on February 27, 2016. While Triumph agreed to honor the collective bargaining agreement, we never agreed to release Goodrich from any obligations under that agreement." Tripp Aff. ¶ 8. Levine, who participated in the sale negotiations while employed by Defendant, says for his part,

> Triumph agreed that, after the closing, all of the employees . . . would continue working in the same jobs . . . for Triumph, as the business's new owner. All parties acknowledged and assented to this arrangement. . . .
>
> It was further understood that, at closing, Triumph would assume and agree to be bound by all of Goodrich's obligations under the terms of the existing collective bargaining agreement . . . . With this substitution of Triumph for Goodrich, the employment relationship between Goodrich and the UAW's members would terminate, and Goodrich's continuing performance obligations under the CBA would be discharged.

Levine Decl. ¶¶ 3-4. Levine's statement does not directly ascribe this "understanding" of novation, but it can be assumed that he ascribes that understanding to "all parties," as referenced in the prior paragraph. There is no further detail as to how Levine, in his capacity as Defendant's representative, ascertained Plaintiff union's understanding of the impact of the sale.

Defendant Goodrich mischaracterizes Bayly's letter as acknowledgment *and* acceptance of Triumph's commitment to honor the CBA. *See* Def. Reply Br. 11. Bayly's letter reads, in relevant part,

> We are pleased that you will be hiring the existing workforce, and honoring the current collective bargaining agreement.
>
> There are, however, a number of issues over which we would like to bargain and we have a number of questions we have concerning the sale. We will ask out members to hold off on signing the letter that you are requesting until the transition questions are answered.

Levine Decl. Ex. A. Making all reasonable inferences in Defendant's favor, Bayly's letter is at best an *acknowledgment* of Triumph's intention to assume Goodrich's duties under the CBA. Given that, after this acknowledgment, Bayly immediately expresses reservations about moving ahead, it is hard to see how Defendant can read this letter as an *acceptance* of Triumph's assumption of the contract duties, quite apart from the *release* of Goodrich.

As to the March 2013 offer letter, it states, in relevant part, "Triumph will recognize your service, vacation accrual date and service record with Goodrich and will honor the terms of the existing collective bargaining agreement between Goodrich and the United Auto Workers." Tripp Aff. Ex. 2. This goes to Triumph's assumption of Defendant's duties under the CBA, and, by Tripp and the other employees' acceptance of these offers, to their acknowledgment and perhaps acceptance of that assumption. It is, however, a bilateral communication between Plaintiff union members and Triumph, excluding Defendant, and thus does not evidence any express or implied release issuing from Plaintiffs to Defendant at the time of the sale.

Defendant cites authorities for the proposition that oral agreement or the conduct of the parties can establish a novation, and urges that "at least some limited discovery" should be allowed to further develop its theory of novation. Def. Reply Br. 9-10. But, under the Rules, Defendant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. 586 (1986). Defendant provides no indication as to what

these words or actions evidencing Plaintiffs' release of Goodrich might have been, nor what possible evidence could be obtained through discovery to substantiate them. Levine, who participated in the sale negotiations as Defendant's representative, seemingly does not recall any such words or actions, and there is no suggestion that someone else would do so. *See* Levine Decl.

Rule 56 requires the Court to draw all reasonable inferences in favor of the non-moving party. But the inference Goodrich asks me to draw – that the Levine and Tripp affidavits, the correspondence between Bayly, Levine, and Bauer, and the offer letter to Tripp create a "compelling" inference that the March 2013 sale constituted a novation, which discharged Goodrich entirely from any obligations – is not a reasonable one. The cited correspondence includes explicit statements to the contrary, enumerating Defendant's ongoing pension obligations to Plaintiffs. Bauer refers to "UTC's post-closing pension obligations," and Levine's letter states that, post-sale, "[t]he UTC pension plan will pay benefits in accordance with the plan provisions, including the pension multiplier, in effect at the time of the closing date of the sale." Levine Decl. Exs. B, C. I hold that no reasonable jury could find that the cited evidence demonstrates a novation.

## X. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss to a Motion is DENIED.

As to Plaintiffs' Cross-Motion for Summary Judgment, the Court finds that, construing all facts in favor of the Defendant, 1) the Parties remained bound by the CBA at least until its stated termination date of February 27, 2016; 2) Defendant refused to process Plaintiffs' grievances brought under that CBA; and 3) the incorporation of the Pension Plan by reference into the CBA does not exempt the Plaintiffs' underlying grievance from the CBA's arbitration clause. Therefore, Plaintiffs' Cross-Motion for Summary Judgment is GRANTED.

Because Plaintiffs' grievances allege violations of the CBA, and because resolving these alleged violations will require an interpretation of the CBA, this Court finds that the grievances are subject to arbitration under Article V of the CBA. Accordingly, the Court enters an ORDER compelling Defendant Goodrich to accept and process grievances concerning the alleged interruption of seniority and early retirement provisions of Article VII § 5 and Article XVII §1 the CBA, including submitting them to binding arbitration if otherwise unresolved.

In addition to its main aim of securing a court order compelling arbitration, the Complaint also requests "such other relief as is appropriate, including [Plaintiffs'] attorney fees and costs." Neither Party has provided briefing on this issue. If the Plaintiffs desire to press claims for costs and fees, they must file supporting papers not later than October 20, 2017. Plaintiffs are reminded that the claim for attorneys' fees must comply with the Second Circuit's decision in *New York Ass'n of Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983), which requires that the documentation include "for each attorney, the date, the hours expended, and the nature of the work done." Plaintiffs should also note that the Court is required to conduct a "'lodestar' analysis, which calculates reasonable attorneys' fees by multiplying the reasonable hours expended on the action by a reasonable hourly rate." *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 108 (2d Cir. 2014).

Defendant is entitled to oppose the claims for costs and fees, in whole or in part. Any opposition must be filed within fourteen (14) calendar days of the service of Plaintiffs' claim upon them.

It is SO ORDERED.


Dated:  New Haven, Connecticut
            September 29, 2017


                                        __/s/ Charles S. Haight, Jr._____
                                        Charles S. Haight, Jr.
                                        Senior United States District Judge